# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| DAVID STEVERSON, et al., | ) | 1:06cv0545 DLB |
| | ) | |
| | ) | ORDER DENYING DEFENDANT'S |
| | ) | MOTION FOR SUMMARY JUDGMENT |
| | ) | |
| Plaintiff, | ) | (Document 25) |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

On November 13, 2007, Defendant United States of America ("Defendant") filed the instant motion for summary judgment, or in the alternative partial summary judgment. The motion was heard on December 21, 2007, before the Honorable Dennis L. Beck, United States Magistrate Judge. Brian Enos appeared on behalf of Defendant. Steven Roberts appeared on behalf of Tracy Steverson and Diedre Cook (collectively, "Plaintiffs").

**BACKGROUND**

This action arises out of injuries sustained by Plaintiffs on February 8, 2003, while using an innertube on a snow run at Coyote Sno Park. They filed a complaint for damages on May 5, 2006, along with Tracy's parents, David and Terry Steverson.[1] The complaint was filed pursuant to the Federal Tort Claims Act, 28 U.S.C. § 1346(b), and alleges causes of action against

---

[1] David and Terry Steverson were dismissed from this action pursuant to the parties' September 11, 2007, stipulation.

Defendant for negligence and premises liability. Tracy Steverson requests damages in the amount of $250,000, and Deidre Cook requests damages in the amount of $125,000.

Defendant filed the instant motion for summary judgment on November 13, 2007, arguing that summary judgment should be granted because (1) Plaintiffs assumed the risk; (2) the post on which they were injured was open and obvious; and (3) California's trail immunity statute applies, Cal. Gov. Code § 831.4.

Plaintiffs filed their opposition on December 4, 2007. Defendant filed its reply on December 14, 2007.

## UNDISPUTED MATERIAL FACTS

On February 8, 2003, Plaintiffs Tracy Steverson and Diedre Cook were injured while riding an innertube down a snow-covered hill at Coyote Sno Park off Highway 168 in Fresno County. The accident occurred in the afternoon, around lunchtime, and the weather was sunny and below freezing, with no water from the snow flowing into the street. Tracy Steverson Dep., attached as Exhibit C to Dec. of Brian Enos ("Tracy Steverson Dep."), 21:11-20, 27:13-20; Deidre Cook Dep., attached as Exhibit D to Dec. of Brian Enos ("Cook Dep."), 44:10-19. Plaintiffs were injured when their innertube hit a metal post in the snow. Tracy Steverson Dep., 16:2-6; Cook Dep., 16:24-17:2. The innertube on which Plaintiffs were riding had no steering or braking mechanisms. Tracy Steverson Dep., 15:11-17; Cook Dep., 43-22-44:2.

Prior to impact, Tracy's father, David Steverson, walked towards the bottom of the run because he was concerned about Plaintiffs "running onto the trees." David Steverson Dep., 19:11-20. Upon impact, Plaintiffs were not slowing down, but instead going "at a constant rate of speed," despite going "fast" and Cook trying to "dig [her] heels in the snow to stop..." The impact felt like "hitting a wall." Cook Dep., 49:13-17, 50:13-17 and 69:10-14.

The post that Plaintiffs struck was located towards the left of the snow run.[2] Susan Burkendine, the Person Most Knowledgeable with respect to the Coyote Sno Park, explained that

---

[2] As shown in the photos attached as Exhibits B and F, the post is located on the left side of the snow run. The parties disagree on whether the post was within or outside the run. The characterization of the location of the post, however, is not relevant to the determination of this motion.

2

the post was used as a latch for a gate at the head of Forest Service Road 9S27. When the gate was open and latched to the post, the road provided forest access to loggers during the summer months. In the winter, the gate is closed and Road 9S27 is used for non-motorized winter recreation. Declaration of Susan Burkendine, ¶ 2.

**DISCUSSION**

A.   Summary Judgment Standard

Summary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). "If the party moving for summary judgment meets its initial burden of identifying for the court those portions of the material on file that it believes demonstrates the absence of any genuine issues of material fact," the burden of production shifts and "the non moving party must set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'" T.W. Electric Service, Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987)(quoting Fed.R.Civ.P. 56(e)). As to the specific facts offered by the nonmoving party, the court does not weigh conflicting evidence, but draws all inferences in the light most favorable to the nonmoving party. Id. at 630-31.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Rule 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., 809 F.2d at 630, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Rule 56(c). The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

B.  Analysis

The Federal Tort Claims Act waives the government immunity from suits for negligence and makes the government generally liable in the same manner as individuals under state law. 28 U.S.C. § 1346(b). Since the alleged tort occurred in California, California tort law applies. See 28 U.S.C. § 2674. In California, "[a]ctionable negligence involves a legal duty to use due care, a breach of such legal duty, and the breach as a proximate or legal cause of the resulting injury." United States Liab. Ins. Co. v. Haidinger-Hayes, Inc., et al., 1 Cal.3d 586, 594 (1970).

1.  *Assumption of the Risk*

The doctrine of primary assumption of risk is a complete defense to a negligence claim. "Where, by virtue of the nature of the activity and the parties' relationship to the activity, defendant owed no legal duty to protect plaintiff from the particular risk of harm that caused the injury (so-called 'primary assumption of the risk'), plaintiff is completely barred from recovery." Knight v. Jewett, 3 Cal.4th 296, 308-309 (1992). The doctrine applies where a plaintiff voluntarily participates in an activity or sport involving certain inherent risks. Souza v. Squaw Valley Ski Corp., 138 Cal.App.4th 262, 266 (2006).

The parties agree that assumption of the risk applies to Plaintiffs' innertubing activities. However, there is a dispute as to exactly what risk Plaintiffs assumed, i.e., whether running into the post was an inherent risk of innertubing. Plaintiffs rely on Van Dyke v. S.K.I., Ltd., 67 Cal.App.4th 1310 (1998), a negligence action brought by a skier who was injured when he crossed a ski run to reach a chairlift and struck a steel directional signpost.

> In the sports setting ... conditions or conduct that otherwise might be viewed as dangerous often are an integral part of the sport itself. To decide whether a duty will be imposed on a participant in a sporting activity, the court must determine whether the injury suffered arises from an inherent risk in the activity, and whether imposing a duty might chill vigorous participation in the implicated activity and thereby alter its fundamental nature. Determination of what constitutes an "inherent risk" is a legal question for the court. . .
>
> . . . Van Dyke alleged, and presented evidence tending to show, Bear Mountain increased the risk of harm by placing a signpost in the ski run where it was virtually invisible to skiers crossing over to the connector trail to chair lift No. 2. Unlike a ski lift tower which is wide and equally visible from all angles, the sign Van Dyke hit had about an eight and one-half inch profile including the foam wrapping. Van Dyke's expert opined the black wrapping made the pole blend into the background. Van Dyke approached from the side as he crossed the run so he could not see the face of the sign. None of Van Dyke's skiing partners saw the sign, and he did not see it until it was too late to avoid the impact. None of the cases on which Bear Mountain relies suggests this scenario is an inherent risk of skiing or that eliminating it would have an unduly chilling effect on the sport.
> Van Dyke, 67 Cal.App.4th at 1315-1316 (internal citations omitted).

The court concluded that the defendant had a duty to mark the signs so they are plainly visible from all angles to skiers; otherwise, the ski area, by an affirmative act, significantly increases the risk of harm. Id. at 1317.

Whether the risk was assumed, then, and whether Defendant increased that risk, turns on whether the post was plainly visible to Plaintiffs. As would be expected, the parties dispute this issue.

Citing David Steverson's deposition, Defendant argues that the post was sticking an entire foot above the snow line and was therefore plainly visible to any reasonable person intending to slide down the run. However, as Plaintiff points out, Mr. Steverson was asked about his recollection of the post *after* the accident.

> Question: After the point of impact, do you recall how far the pole was sticking out above the snow line?
>
> Answer: Yes, I'd have to say probably at least 12 inches.

David Steverson Dep., 24:8-12.

Defendant further agues that the testimony only establishes that Plaintiffs were not *aware* of the post prior to the accident, rather than establishing that the post was hidden under the snow.

In contrast, and citing much of the same testimony, Plaintiffs contend that the post was obscured from view prior to the accident. Tracy Steverson Dep., 16:18-23, 17:9-16, 19:6-14, 21:5-7, 28:13-18; Cook Dep., 46:24-47:5; David Steverson Dep., 23:23-24:12, 20:6-9; Terry Steverson Dep., 24:24-25:9.

After reviewing the evidence, the Court finds that there are factual issues as to (1) whether the post was plainly visible; and (2) whether Defendant increased the risk. <u>Van Dyke</u>, 67 Cal.App.4th at 1317. For example, Tracy Steverson testified that the post was submerged under the snow on the day of her accident and that she never saw the post, even after her accident. Tracy Steverson Dep., 16-17. Deidre Cook testified that she did not see the post when they took off and that she believed it was "hidden" on the day of her injury. Cook Dep., 46-48. David Steverson testified that he did not notice whether the post "was there or not" and explained that he did not see it. David Steverson Dep., 20. Yet after the accident, he testified that it was sticking up 12 inches, even though the snow was hard-packed and the temperatures below freezing so as to make it unlikely that the accident cleared that much snow from the allegedly buried post. David Steverson Dep., 24. Supporting Mr. Steverson's testimony are pictures

submitted by Defendant, which show that the post was clearly visible.  Of course, there are issues as to the time and conditions under which these pictures were taken, but given the contrast between the pictures and Plaintiffs' testimony, as well as the imprecise and somewhat contradictory nature of some of other testimony, the Court cannot find that the material facts are undisputed.  Even though the evidence may preponderate towards a finding that the post was plainly visible, there still exists a factual dispute, *however small*, that is not amenable to resolution on summary judgment.

      2.    *Open and Obvious*

In California, there is no duty on the part of a landowner to guard or warn against an open and obvious condition.  <u>Wylie v. Gresch</u>, 191 Cal.App.3d 412, 424 (1987).  For the same reasons as this Court is unable to grant summary judgment on assumption of the risk, it cannot grant summary judgment based on a open and obvious condition.

      3.    *Trial Immunity*

Finally, Defendant argues that even if Plaintiffs can demonstrate liability, it is entitled to trail immunity pursuant to California Government Code 831.4, which provides:

> A public entity, public employee, or a grantor of a public easement to a public entity for any of the following purposes, is not liable for an injury caused by a condition of:
>
> (a) Any unpaved road which provides access to fishing, hunting, camping, hiking, riding, including animal and all types of vehicular riding, water sports, recreational or scenic areas and which is not a (1) city street or highway or (2) county, state or federal highway or (3) public street or highway of a joint highway district, boulevard district, bridge and highway district or similar district formed for the improvement or building of public streets or highways.
>
> (b) Any trail used for the above purposes.

Defendant's argument that it is entitled to protection as a  "public entity" is unconvincing given the definition of "public entity" set forth in Government Code section 811.2:

> "Public entity" includes the State, the Regents of the University of California, a county, city, district, public authority, public agency, and any other political subdivision or public corporation in the State.

## ORDER

Accordingly, based on the above, Defendant's motion for summary judgment is DENIED.


IT IS SO ORDERED.

Dated:  **January 25, 2008**          **/s/ Dennis L. Beck**
                                    UNITED STATES MAGISTRATE JUDGE